Next case on this morning's docket is the case of Rebecca Kolar and Clay Kolar v. Makanda Township Road District, Danny Williams, Highway Commissioner of Makanda Township. We have various appellees, appellants, appellees, appellants. We have Mr. Gregory Veach for the appellants. And we have Mr. Dan Orlosky. You have a very interesting signature, Mr. Orlosky, for the appellee. And I would like to first put on the record, you may have already heard my little spiel, but it's obvious that there's only one of the panel members today rather than three, and we had some unforeseen circumstances. However, the other two justices have been assigned the case, and they have read briefs, and they will have oral auditory tapes available. So with that said, you can proceed with your arguments. Thank you. So Mr. Veach. May it please the court and counsel, I'm Gregory Veach, and I represent the appellant and the separate appellee in Kanda Township Road District against Highway Commissioner Dan Williams. We're here today to argue about the propriety of the trial court's order entered more than a year after the close of an evidentiary hearing on a petition, a plaintiff's petition, seeking an entry of a preliminary injunction. The trial court's order denied the request for the preliminary injunction, but ruled that the highway commissioner's prescriptive right-of-way and his maintenance jurisdiction over the public road could not exceed three to five feet on both sides of a 20-feet-wide driving surface. A hearing in the court below on the plaintiff's complaint for temporary and preliminary injunctive relief took place during parts of two days in September 2013, only eight days or so after the defendants were served with summons and notice of the entry by the trial court of a temporary restraining order on August the 26th. The lower court heard testimony from both plaintiffs, the defendant highway commissioner, and from four or five persons who lived along or adjacent to Shepherd Lane, which is the name given to the public road that McKenna Township and its highway commissioners had maintained, according to the record, for at least 60 years. More than a year later, the court entered a written order that did not specifically state that the plaintiff's petition for relief of preliminary injunction was denied, but it found that Shepherd Lane was a public road, publicly maintained by McKenna Township for greater than the required statutory period, but that the highway commissioner was limited to an area of three to five feet on either side of the 20-feet-wide surface road that the court granted where necessary. The highway commissioner filed a timely notice of appeal from that order. The plaintiffs sought a post-trial motion, and the court denied the post-trial motion, and the plaintiffs filed a separate notice of appeal as well. Before discussing the substantive issues, there's a not-so-minor issue that bears addressing, and that is whether this appeal arises under Rule 301 or 307. 301 authorizes appeals for final judgments. 307 authorizes an appeal to the appellate court from an interlocutory order granting or denying an injunction. The plaintiff's pleadings in this case seek injunctive relief. Temporary and preliminary injunctions are specifically requested in the plaintiff's pleadings. A permanent injunction was not prayed for in the pleadings. There has been no amendment to those pleadings. Can I ask you, and this may not be part of the record, was there any rationale stated by the court for the fact that it was over a year after the hearing that this preliminary matter was decided? I don't believe there is in the record, and I have no discussion about it on counsel. But there was a statement, I guess, by the court that it was going to be determined in a couple weeks? Yes. When the last hearing was finished, the record shows that the court said it would rule in seven to ten days. And you basically are saying that the court then made a permanent finding when there was no such prayer for relief. Well, I'm sorry. Ever before the court. That's okay. I'm saying that if we handled this appeal under Rule 301, we're treating that as a final judgment. And I'm saying that would be unfair to the defense. Because there never was a final. In my opinion, although appellees and separate appellants seem to argue that it was a final judgment. But my point is that it has to be treated under 307. Because to treat it under 301 as a final judgment would deprive my client, a highway commissioner in a road district, of opportunity to develop a case. And you're contending basically that the court never had a right to treat it as a final judgment. But in fact, it appears that it did treat it as a final judgment. Are my parsing hairs? I don't really think that it treated it as a final judgment. And the reason is because in the order denying the post-trial motion filed by the plaintiffs, the judge specifically said, preliminary injunction denied. So by using the word preliminary. But it went on. It denied, but then it did afford a permanent relief. It said, and maybe this statement in the order was not necessary to decide the case. Maybe it was. It said that the commissioner and the road district were limited in its maintenance jurisdiction over this public road to this three to five feet area along both sides of 20 feet wide roadway surface. And it is what it is. I think it's a preliminary denial. OK. So you think that was dicta? I think it could be dicta. But it was dicta that my client was afraid enough of that we filed this appeal. Because if it was the goal of my client, the commissioners, to go out there and bring beyond the three to five feet, it might be found in contempt of the court, depending on how one would look at it. Help me with my math. Aren't we maybe talking about potentially two and a half feet difference on each side? If it was 40 to begin with, and it's 20 plus five? Three to five. Three to five. But let's take the five. Yes, Your Honor. So we're talking about perhaps two and a half feet on each side. The land and mechanical township, pretty important. But yes, we're going to apply it. Yeah, I didn't mean to minimize it, but that's what we're talking about. No, that is correct, Your Honor. And that is why that really the importance of this 301 versus 307, I don't think it is important regarding the standard of appellate review. But it's important that if it's a 301 appeal and it's a final judgment, wait a minute, we didn't have time to get all of our evidence and witnesses together. And this is a preliminary injunction. If one looks at the pleading spot of the plaintiff and that determines the issues in the trial, it says preliminary and temporary and doesn't say permanent. The Supreme Court warned in my side of cases in the brief about against blurring the distinctions between preliminary and a permanent injunction. And if we handle this appeal under 301 rather than 307, I believe we're blurring the distinction that the court has warned against. On the substantive level, therefore, I see four issues on this case. One, are the trial court's findings that the Sheppard Lane has been used by the public and maintained by the Highway Commissioner for greater than a statutory period of 15 years against the manifest way of the evidence? Second, does the trial court's conclusion that Sheppard Lane is a public road subject to maintenance by the Highway Commissioner constitute an abuse of discretion? Third, is the trial court's finding that the road districts have no prescriptive rights or maintenance jurisdiction beyond that three to five feet on both either side of the roadway surface against the manifest way to the evidence? And does that determination constitute an abuse of discretion? The trial court properly found, I believe, based on the record that Sheppard Lane had been used by the public and maintained by McAnda Township for longer than the statutorily prescribed period of 15 years. And its conclusion that Sheppard Lane was a public road maintained by the defendants was not a clear abuse of discretion because there was a lot of evidence in the record showing historical use and maintenance of the road for more than a 15 year period. The record shows, I think clearly, that the present Road Commissioner maintained Sheppard Lane, maintained a 40 feet wide right of way along Sheppard Lane since he became Highway Commissioner 29 years ago, 1986. Well, there was witnesses both ways, wasn't there, with respect to that? I believe that the plaintiff's testimony on public use and maintenance was somewhat equivocal on wetland. Naturally, you would expect the plaintiff to say, no, public hasn't used it, and they did. No, the public hasn't maintained it, which they did and they didn't. I think the plaintiff's resistance had to do with the area beyond the driving surface that the Highway Commissioner might be able to maintain. He wants to cut the banks, remove the trees that overhang this old country road so as to make the passable by two cars. The plaintiff's owned a 69 acre tract of land along this road that's shown in the exhibits in the photograph. And they don't want the trees removed, and they argued that their privacy would be impaired if the road was improved. Well, I guess the only issue with respect to the maintenance was how much they had maintained in the past, correct? It is that. It is that. The judge, the courts, and lawyers basically says the rule is, and I agree with this to this extent, it's WYSIWYG. What you see is what you get. What you have maintained over a prescribed period of time is what you have. But there is also another aspect to this, Your Honor, and that is the cases regarding these prescriptive roads and easements point out that. Pardon? That the easement, or the prescriptive easement, includes not only where the public travels, the rut, the lagging ruts, but it includes an area beyond that on either side that is necessary to make that easement effective. Because, I guess, the theory is having a road where the wagons travel on, if there's nowhere for the water to run off, and to keep the trees and the vegetation back, then they will take over the roadway. So the courts have recognized that there is this penumbra of area on either side of the road. Now, who makes that determination? It's my argument that this highway commissioner is a duly elected state constitutional officer, having police powers to keep and maintain the public roads open and passable, and that he or she makes the determination of what is necessary and reasonable to make the prescribed or prescriptive easement open and passable. Now, the highway commissioner at present, Highway Commissioner Mr. Williams, testified that he needed, well, he testified that, to the effect that maintenance and repairs were lessened, and safety enhanced when the road had a wider shoulder area to provide support and a proper range from the roadway surface and better visibility. A determination of the amount of right-of-way necessary to maintain a long shepherd lane is an exercise by the highway commissioner of a police power to protect general health, safety, and welfare. This highway commissioner, as well as at least one of his predecessors that we were able to come up with in that eight-day period, testified that a 40-feet-wide right-of-way has been maintained by the township's road commissioner along Shepherd Lane for several decades now. And the past two in which the plaintiffs had owned their property along Shepherd Lane. It's my contention that this determination made by Mr. Williams, one of his predecessors, apparently a long line of highway commissioners in the township who maintained the road by mowing, grading, plowing snow and ice, clearing trees and brush and other vegetation, a 40-feet-wide right-of-way along Shepherd Lane and other roads in the district is what the commissioners have maintained historically. And until 2014, nothing in the record indicates anyone objected, including the plaintiffs who've owned their property, as we say, since 1992 until recently. Well, excuse me, but just factually, they're complaining about the commissioner wanting to remove trees, etc.? Correct. You say that they had maintained that width historically at that location. How is it that all of a sudden they want to remove trees? They wouldn't be there. Now, historically, this little rural township has maintained this road as a narrow gravel lane. And trees grow up along the side, on the bank, over the years, I assume. But the testimony was that the road commissioners go along and grade and mow along the side of the road. And the testimony in the record from the highway commission was he has this machine that has a 20-feet-long boom along the side that allows it to drive the tractor down the lane, but mow and brush 20 feet on either side of the road with this hydraulic boom. So that was an argument at the trial floor. The plaintiffs say, well, I think the question was, do you agree that the highway commissioners maintained it 20 feet on either side? And I think the plaintiff's testimony was, well, there might be some debate on the degree of maintenance. And I think the evidence in the record is clear. The former commissioner stated this. Mr. Husky, one of the witnesses, testified. And Mr. Williams testified that, yes, they removed brush from the side of the road, and they have maintained 40 feet. That's pretty much their consistent testimony, that they maintained 40 feet. And what does maintain mean? Well, they didn't put the gravel out that far. They've not really dug permanent ditches because the record shows that the ditches are inadequate. And the drainage from the banks runs onto the road is the way I would infer from the testimony. So it sounds like they're wanting to do now what they should have done? What they've never been able to do, mainly for money reasons, I believe, is what was in the record. And then there was the debate, well, if you let, there was some testimony in the record, the colloquy between the court and the highway commissioner about how much this would cost if it was let out for bids and so on and so forth. The commissioner testified he doesn't let these out for bid. He does them a small amount at a time so that the bidding requirement doesn't come into play because he couldn't afford, or the commissioner in the road district couldn't afford $200,000 to $400,000 to oil and ship this two-mile section of road and install or maintain proper drainage. So it's a process. It's kind of like poor people have poor ways and poor road districts have poor ways, and they don't come in and build Highway 13 or 64 overnight. They've been at it for 40 or 50 years. But I think the record is clear that during that time, they maintained it. What does maintain mean? Well, cutting the grass would be maintenance. Well, I have another question. I'm having trouble coming up with the word, but your opponents argue that the statute only allows that width for, is it atrial? Arterial. Arterial. Okay, arterial roads. The statute. And that this is not an arterial road. That was the judge. And this is not, I guess it's not an arterial road. I don't know what an arterial road is. There's no explanation in the record. I think it probably relates to an artery somehow. Well, that would mean one would have more traffic. An artery has more blood than a vein or a capillary, I guess, if that's the analogy. I think that the court pointed out and made correctly that this 40 feet is a goal or a target. It's not a requirement. Because there are township roads possibly, probably acquired by prescription that are less than 40 feet. In fact, he went out and measured his road, I think, the judge did. Well, it looks like. To me, that's what it looks like. Well, he talked about actually a road that he traversed and that it was not nearly that wide. Yes. To that extent, that was improper. I submit with all respect to the judge, I believe that that would have been improper. Just as it would have been improper for him to get out of his car and take a measure across that public road and find out that it was or was not 40 feet. So I think what has to be taken is, was the evidence sufficient? Or was the court's finding that they hadn't maintained 40 feet, was that supported by the record  And if I look at things the way I do in that record, I see the 2,000 highway commissioners testifying that they've always maintained that road and other township roads at 40 feet right of way. And that doesn't mean the driving surface is 40 feet, the right of way. And I think the judge, with his driving home, confused that. Because one might look and see a narrow road, but there has to be more area on either side to keep the vegetation back, provide for drainage, and to give better visibility. There was testimony in the record about that one witness, I think it was Mr. Husky, that some of the people that live on this lane can't see his vehicle coming down the road. And that would be one of the reasons why, safety reasons, why the commissioner would want to use whatever money he could find to expand the width of the area. I'm running out of time, but I will say this. I think the trial court properly denied the request for preliminary injunction. It was clear that that was a public road, that it is a public road. I think the trial court was correct in not abusing, it was not an abuse of discretion to find that the maintenance of the public road was with the highway commissioner. What my client's argument is, is that there was a lack of evidence, a paucity of no evidence, in fact, of the limit of three to five feet on either side. And I further feel that the court's imposition of that rule invades the constitutional and statutory duties of the highway commissioner to make that determination of what's necessary and reasonable. Thank you. Thank you. I'd like the opportunity for rebuttal. Mr. Orlowski. Thank you. Would you first speak to what kind of judgment you believe the trial court entered? Yes, Your Honor. What kind of authority do you have to enter it? Yes. May it please the court, Your Honor, counsel. My name is Daniel Orlowski. I'm here for the plaintiffs in the lower court, Rebecca and Clay Colvin. And in response to the court's inquiry, I would say this. This was not brought up until Mr. Beach did it in his reply brief. It was never brought up at the trial. The Illinois Code of Civil Procedure does a terrible job when it comes to seeking injunctions. It makes you believe that you apply for the temporary one under 735 ILCS 511-101, and then somehow you seek this preliminary. And the only difference between the two is the notice requirement. But what the case law differentiates and what the trial judge did, and even on inquiry, said in court, and then in his order, he uses the words permanent injunction on C-94 of the record. They did have notice. They were in court. There was a full hearing, and that is the key words to whether it is temporary or permanent. Was there a full hearing on the issue? And there was indeed. There was two days of hearings on this matter. They did have notice that it was going to be a permanent injunction hearing? Well, they had notice that there was going to be an evidentiary hearing on the matter. On their temporary injunction? On the second pleading that was filed, which I filed under 102 of the code. Now, as to his claim now that, well, he would have done better, on page 69 of the transcript, when the judge asked him if he had any more evidence and so on and so forth, he said, well, he did, but it would just be repetitive. And so to me, that kind of negates his arguments on that point today. Moreover, 735 ILCS 5-11-107 does assert that seeking the wrong remedy is not fatal, and that seems to address a situation like this. And again, the trial judge termed this a permanent action, and he said this was a final order when asked. And my motion for reconsideration. That's as far as I can address that point. The passageway that we are talking about here in this matter is a dead-end road. It is signed a dead-end road when you come upon it. There is no way that any rational person can somehow conclude that this is like a highway, which is the whole premise of all this. In a highway, you're able to use this passageway as a throughput to get from point A to point B. You can't get anywhere past the end of this road here. Although it does have businesses on this road, I understand. There apparently now, and the testimony was inconclusive on that point, a member or a property owner who has the same rights as everybody else along this road, basically, their use of the road to get ingress and egress to their property, rents cabins. But in addition, there was another business, correct? No, there is not a business on this road. There is a person that lives there that comes home from his business activities, and he brings his vehicles back to his own personal property. And he goes back out the next morning with his personal vehicle that he happens to use for his business. But he was quite clear when asked by the court, no, he does not own a business from that location. Under the highway statute here, in order to get a prescriptive easement, the road must be shown to have been openly and notoriously used as an open and public highway in common by the public. And when this is pleaded, as it was in a permanent defense by defendants, they have the burden of proving the existence of facts which must be proved to establish such a prescriptive right. And this court has restated this assertion in Feldherr v. Crook and Castle v. Yenorich. Plaintiff's position, of course, is that this burden is not carried whatsoever. The testimony that the public uses doesn't exist. You have property owners that testify. Nobody talked about the public using this. The closest they came, and the court improperly concluded, was that you have this person now who's starting to rent the cabin. But those cabin people that use that are turned in by fees under the property law of this state, of this country, period. They are permissive users. Their use can never ripen into adverse use, which is the premise to get a prescriptive easement. The defendant's attorney relentlessly draws out the notion that his clients maintained a 40-foot right-of-way for 50-plus years. The record does not show this in any way, shape, or form. You have the defendant's witnesses making a blanket statement, but then when questioned, they back down and say, no, we were only able to maintain up to about 18 feet or so, okay, period. There was a DVD filmed of this road that was introduced into evidence. I urge this court to look at that. You can clearly see there is no way under God's green earth that they could have maintained beyond what you see in that picture, in that video. They cannot, and they did not. And why is that that they could not? Is it, as I suggested, there were trees and things? There's trees, there's banks. It's just physically impossible. But they want to change that, alter that. Sure they do, because the more houses that can be built along that road, the more property dollars the township gets. It's pure and simple, capitalism, dollars, period. That is the only reason they want to do this. They're not doing this because somehow they just, you know, feel like it shouldn't be done. And moreover, he talks about this not going out to public bid ever. And the reason he does that is because Danny Williams doesn't work in pockets of the money. I mean, again, it's these self-interests that are motivating their position. And as to the issue of maintenance, whatever footage is determined, maintenance in and of itself does not allow for a determination that a prescriptive easement exists. The trial court placed reliance on the case of City of Des Plaines v. Rivella as some sort of authority for this notion. But the case not only did not make such a conclusion, it misquoted the case it cited by using the words strong evidence. When, in fact, in the people ex rel Kenny, the court said an indication. Moreover, in the City of Des Plaines case, the discussion of maintenance is really dicta because there is conflicting testimony about the point. And it in no way went to the holding of the case. It had nothing to do with the holding. Moreover, other facts in this case that afford maintenance as being a basis for establishing prescriptive easement are that the plaintiffs pay taxes on the whole parcel. Their property runs to the center of that road, just like everybody else's. In fact, there's a property owner whose property extends across that road. No easement, no dedication, no right of way ever put in place. Moreover, there's evidence in the record that there was signs put up saying, you know, private road, danger, blah, blah, blah. They assert dominion and control over the land in question. Again, thwarting that this was some kind of public way. Again, it doesn't exist in the record. In fact, just the opposite. Defendants make much ado about plaintiffs acquiescing in the account of having maintained this road. The cases in Illinois are replete that acquiescence implies permissiveness. And again, does not allow that to be a basis to get a prescriptive easement across one's land without compensation. And no matter how you parse the facts in this matter, no matter how you look at what the testimony was about maintenance, the fact remains. The land in front of plaintiff's property, the usage in any way, shape, or form by that township or anybody that used the road was 14 to 18 feet. Period. There is no getting around that fact. The Illinois Supreme Court in the City of Highland case, which I cite in my brief, they put forth what the law is. And in that case, it was road purpose. That's their definition, road purpose. But that road purpose, the amount of land used for that road purpose had to be used for the prescriptive period. Defendants try to say that that case says more than what it says. Because the court at one point in their ruling states, quote, so that in some places it is three or four times wider than it was originally. And, quote, however, the court in writing that sentence did not include the numeric value for the footage of land used historically or the drainage ditches. The court clarifies this meaning, however, later in the opinion where it states, quote, and it is not disputed that the improvement is located within the area occupied by the old gravel roadway and its drainage ditches. They go on. We conclude that the evidence sufficiently shows a prescriptive right in the public to use a strip of land embracing a gravel road with its drainage ditches and that the proposed improvement does not extend beyond that boundary. Further, there is no evidence showing public use of any land for road purposes beyond the limits of the drainage ditches on either side of the travel track. In the same manner, the defendants try to say that the case of Semberling be hajacked seems to say more than it does. Careful analysis in that case. The court's verbiage seems to ignore what the Supreme Court said in the City of Highland case regarding road purposes. But they do not know a follow of that court's ruling because there is evidence before them at the trial court that the six feet on both sides of the road had been used for road purposes. That is not the case in the matter before the court now. Again, 14 to 18 feet in front of Plaintiff's property, there was never more used in any way, shape, or form for road purposes. On the issue of defendants trotting out this police power, there's some way to get around the statutes of how you obtain a prescriptive easement. It doesn't wash. It is elementary that a municipality possesses no inherent police power and can only legislate upon or with reference to that which is authorized by the state. The Semberling case that I referred to earlier should completely put to bed the notion that defendants somehow assert that the highway statute gives them police power to do what they're trying to do. To quote Semberling, Section 6-301 of the Highway Code does not govern the width of public highways established by prescriptive easement. So they have no basis under any police power theory to try to get from point A to point B here. I will take the rest of my time to answer any questions the court may have. I don't think I have any. Thank you. Thank you very much for your argument. You have rebuttal, Mr. Beach. It's not mandatory. First, with reference to the court's order denying the post-trial motion somehow saying that the court intended its September 24 order to be a final judgment, I don't think that's exactly what it says. Frankly, it's somewhat of an incomplete sentence when I look at it. It doesn't say that it is a final order. And even if it did say that, well, horses are out of the corral by that time. We've already had the evidentiary hearing and an order, and they filed a post-trial motion. The defendants have filed a notice of appeal. And so for the court to say, oh, yeah, that was a final order in October of 2014 would be fundamentally unfair and not right. If then the next argument is that the appellants for the plaintiffs made was that, well, this was a public use of the road because the truck business down at the end of the road, Mr. Husky, and the bed and breakfast or cabin or whatever it was on the road, and the other property owners go up and down the road, and all the people that are going to those places are even property owners or guests or invitees of those property owners. Fine. That's fine and dandy. But they're not guests and invitees of the plaintiffs when they cross over that prescriptive road along the plaintiff's property. So that is the element of adversity that the plaintiffs are arguing is absent in this case. And to skip on, then, the argument that acquiescence is permission. I figure that's not right. The courts, even in one of the cases cited by the plaintiffs, say acquiescence is not consent. Acquiescence is kind of like you know what's happening, but you're not objecting, but you're not saying it's OK. It's acquiescence. And that is recognized by our courts as an element in the functional refinement of prescriptive easement. The photos that are on the CV show just what one would expect if one had ever driven along a country road down south in Illinois. And you see these trees right up next to the road, and the brushes hanging over. And those pictures were taken, I don't remember, 2013 or 2014. How can we extrapolate, or how can the court extrapolate from that that those trees have been there for the previous 15 or 20 years or so? Or that because they were there, that there had not been maintenance when both those highway commissioners who testified said, no, they didn't have the equipment to use that 20-foot boom brush mower to knock down the three or four inch or greater trees. So they mowed around them. The fact that they left trees there that were greater than three or four inches or whatever the testimony was, doesn't negate that there was public maintenance along the side of Sheppard Lane. Paying taxes by the property owners, the courts, the cases have said that's only a factor in determining whether there's an easement by prescription. In fact, adverse possession often occurs when the property owner is paying taxes on the property. And then to say that there is no police power in the highway commissioner ignores the Illinois Highway Code and the Township Code, which sets forth like a trust agreement a whole series of paragraphs of what the commissioner's powers and authorities are. Do you disagree then with his statement that Summerling states that if there's a right by prescriptive easement, then you don't have the statute controlling the width? Correct. The statute, I think the purpose of the statute, and I didn't argue this in the brief, I didn't think it was an issue. But I'm looking at that statute, it is the following. Especially given the situation in the high climb a rural township is in. There is a lot of competing forces. Some property owners want the public road. They don't want to have to. These people are out in this two and a half mile road. They don't want to have to pay the gravel and the grading maintenance to get down to their property. They want the public to do that for the township. Then there is the pull of the township that he doesn't want or she doesn't. The highway commissioner doesn't want to have to take every pin trail. This is what the highway commissioner called it to me one time during our conference. He doesn't want to have to take every pin trail that his population wants him to assume. So he has it out in this case. He says, I can't take that pin trail. It's 25 feet wide. I have to have 40 feet by statute. Thank you. Thank you. Thank you both for your arguments and briefs. And we'll take the matter under advisement and under a ruling in due course. Thank you.